UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| ROBERT KATSNELSON, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> -against- <br><br> TPUSA, INC., d/b/a TELEPERFORMANCE, <br><br> Defendant. | Civil Matter No.: 1:25-cv-07272-MMG |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**</u>

                                                          JACKSON LEWIS P.C.
                                                        666 Third Avenue, 29th Floor
                                                        New York, New York 10017
                                                        (212) 545-4000

                                                        Shannon D. Azzaro

                                                        ATTORNEYS FOR DEFENDANT

**TABLE OF CONTENTS**

                                                  **Page(s)**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 5

ARGUMENT .......................................................................................................................... 6

I.      THE WINSTON FACTORS SUPPORT ENFORCEMENT OF THE SETTLEMENT AGREEMENT. .................................................................................. 6

          A.      The Term Sheet is Binding and Enforceable Based on Plain Language ................ 6

          B.      The Parties Engaged in Partial Performance ............................................................ 9

          C.      The Settlement Agreement was in writing and included all material terms. .......... 9

II.     DEFENDANT IS ENTITLED TO REASONABLE ATTORNEY'S FEES AND COSTS INASMUCH AS PLAINTIFF HAS ACTED IN BAD FAITH BY REPUDIATING A COMPREHENSIVE AND MUTUALLY NEGOTIATED SETTLEMENT AGREEMENT. ....................................................................................... 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Adjustrite Sys. v. GAB Bus Servs.,
  145 F.3d (2d Cir. 1998)..........................................................................................................8

Alli v. Renee,
  No. 21-cv-09470-PGS-SN, 2024 U.S. Dist. LEXIS 237122 (S.D.N.Y. Nov.
  21, 2024) ...............................................................................................................................9

Bravo v. Grand Review, LLC,
  No. 15-cv-0030 (DLI)(CLP), 2016 U.S. Dist. LEXIS 36441 (E.D.N.Y. Mar.
  18, 2016) ...............................................................................................................................9

Cardona v. Community Access, Inc.,
  No. 11-cv-4129, 2013 U.S. Dist. LEXIS 10778 (E.D.N.Y. 2013) .......................................10

Elliot v. City of New York,
  No. 11-cv-7291, 2012 U.S. Dist. LEXIS 126133 (S.D.N.Y. Aug. 31, 2012)..................6, 7, 11

Elliot v. City of New York,
  No. 11-cv-7291, U.S. Dist. LEXIS 126133 (S.D.N.Y. Sept. 5, 2012) ...................................9

Goldman v. C.I.R.,
  39 F.3d 402 (2d Cir. 1994)....................................................................................................7

Janneh v. GAF Corp.,
  887 F.2d 432 (2d Cir. 1989)..................................................................................................7

Little v. Greyhoud Lines, Inc.,
  No. 04-cv-6735-RCC, 2005 U.S. Dist. LEXIS 22247 (S.D.N.Y. Sept. 29,
  2005) .................................................................................................................................7, 9

Macleod v. Post Graduate Ctr. For Mental Health,
  No. 14-cv-10041-ALC-JCF, 2016 U.S. Dist. LEXIS 137829 (S.D.N.Y. Sept.
  30, 2016) ..........................................................................................................................8, 10

Meetings & Expositions, Inc. v. Tandy Corp.,
  490 F.2d 714 (2d Cir. 1974)..................................................................................................5

Murphy v. Inst. Of Int'l Educ.,
  No. 19-cv-1528-ALC-RWL, 2020 U.S. Dist. LEXIS 133807 (S.D.N.Y. July 2,
  2020) ..............................................................................................................................7, 8, 9

Opals on Ice Lingerie v. Bodylines Inc.,
    320 F.3d 362 (2d Cir. 2003)..............................................................................................5

Palmer v. Cty. of Nassau,
    977 F. Supp. 2d 161 (E.D.N.Y. 2013) ............................................................................10

Powell v. Omnicom,
    497 F.3d 124 (2d Cir. 2007)..........................................................................................5, 6

Red Ball Interior Demolition Corp. v. Palmadessa,
    173 F.3d 481 (2d Cir. 1999)............................................................................................5

Register.com, Inc. v. Verio, Inc.,
    356 F.3d 393 (2d Cir. 2004)............................................................................................5

Suarez v. SCF CEDAR, LLC,
    No. 13-cv-7420-ALC-RLE, 2016 U.S. Dist. LEXIS 34064 (S.D.N.Y. March
    14, 2016) ..........................................................................................................................7

Vari-O-Matic Mach. Corp. v. N.Y. Sewing Mach. Attachment Corp.,
    629 F. Supp. 257 (S.D.N.Y. 1986) ................................................................................10

Watson v. City of New York,
    No. 11-cv-335 (CBA)(CLP), 2012 U.S. Dist. LEXIS 172310 (E.D.N.Y. Oct.
    24, 2012) ..........................................................................................................................9

Williams v. City of New York,
    No. 14-cv-183-NGG-LB, 2015 U.S. Dist. LEXIS 136170 (E.D.N.Y. Oct. 5,
    2015) ................................................................................................................................9

Winston v. Mediafare Ent. Corp.,
    777 F.2d 78 (2d Cir. 1985)....................................................................................6, 9, 10

Wright v. Eastman Kodak Co.,
    445 F. Supp. 2d 314 (W.D.N.Y. 2006)..........................................................................11

Defendant TPUSA, Inc. ("Defendant" or "TPUSA") by and through its undersigned counsel Jackson Lewis P.C., respectfully submits this Memorandum of Law in Support of its Motion for an Order Enforcing the Parties' Settlement in this action. Settlement was reached between the parties on September 17, 2025, at a mediation held before Mediator Elizabeth J. Shampnoi, Esq. The terms of the settlement were agreed upon and memorialized in a binding Confidential Settlement Terms Summary Sheet ("Term Sheet") and fully executed by both Plaintiff and Defendant. As such, Defendant respectfully requests that the Court enforce the Settlement Agreement.

## PRELIMINARY STATEMENT

Plaintiff, Robert Katsnelson ("Plaintiff"), filed a nine-count Complaint (Dkt. 1) against TPUSA on or about February 26, 2025, asserting claims under 42 U.S.C. § 1981, New York City Human Rights Law, the Equal Pay Act, the New York State Equal Pay Act, the Fair Labor Standards Act, and New York Labor Law. Plaintiff—who has been represented by the same counsel throughout the pendency of this litigation—voluntarily settled his claims against Defendant after an eleven-hour long mediation conference that the parties mutually agreed to and attended on September 17, 2025. Plaintiff and Defendant memorialized the material terms of their settlement in a mutually executed legally binding Term Sheet, which served as an outline for a more formal settlement agreement that was to be executed at a later date. Now, after being presented with the formal settlement agreement for execution – which mirrors the previously agreed-upon term sheet and contains no additional terms – Plaintiff has refused to sign the long form agreement. While the reasons for this refusal remain unclear, it appears that Plaintiff may be experiencing buyer's remorse or attempting to leverage the situation for additional monetary consideration. Regardless of the underlying reason or motive, the formal agreement is fully aligned with the negotiated terms, and Plaintiff's attempt to revoke acceptance is unsupported.

1

Plaintiff's conduct cannot stand and must be addressed. To allow Plaintiff to revoke his agreement on a whim would not only prejudice Defendant, but it would also establish a precedent that could undermine the integrity of settlement negotiations and prejudice every defendant in this jurisdiction perpetually. Defendant respectfully requests that this Court enforce the settlement agreement reached between the parties at mediation and dismiss this action *with prejudice*.

Finally, Defendant requests this Court award Defendant its reasonable costs and attorney's fees in bringing this motion. Had Plaintiff not acted in bad faith by repudiating the settlement, Defendants would not have to move to enforce the settlement. Without any valid reason provided for doing so, Plaintiff has continued to refuse to sign a long-form settlement agreement despite being forewarned that Defendant would seek judicial enforcement of the settlement through this motion.

## STATEMENT OF FACTS

On February 26, 2025, Plaintiff filed a nine-count Complaint against TPUSA in the United States District Court for the Southern District of Florida asserting claims under 42 U.S.C. § 1981, New York City Human Rights Law, the Equal Pay Act, the New York State Equal Pay Act, the Fair Labor Standards Act, and New York Labor Law (Case No. 1:25-cv-80277). (Decl. at ¶ 2).[1] On July 14, 2025, the parties agreed to participate in an in-person mediation in New York City. On July 15, 2025, the Parties filed a Joint Notice of Selection of Mediator and Scheduling Mediation. (Decl. at ¶ 3). The in-person mediation was scheduled for September 17, 2025 in New York, New York before Elizabeth Shampnoi, Esq. (Decl. at ¶ 4).

On August 15, 2025, upon a *sua sponte* review of the docket, Judge Singhal from

---

[1] All references to the Declaration ("Decl.") herein refer to the Declaration of Shannon D. Azzaro, Esq. in Support of Defendant's Motion to Enforce Settlement. All references to Exhibits refer to the Exhibits attached to the Azzaro Declaration.

2

the United States District Court for the Southern District of Florida entered an Order requiring Plaintiff to file a response showing cause why the clerk should not be directed to transfer the case to the United States District Court for the Southern District of New York. (Decl. at ¶ 5). On August 28, 2025, after limited briefing and no express objection from TPUSA, Judge Singhal entered an Order transferring the case to the United States District Court for the Southern District of New York. (Decl. at ¶ 6). This Court acknowledged receipt of the case on September 2, 2025, and confirmed that the case had been opened under Case No. 1:25-cv-07272. (Decl. at ¶ 7). Before the case was transferred, the Parties had exchanged in written discovery (i.e., initial disclosures, interrogatories, requests for production, and related responses). (Decl. at ¶ 8). TPUSA also deposed Plaintiff on September 3, 2025. *Id.*

Despite the change in venue, the Parties still engaged in their previously scheduled in-person mediation before Ms. Shampnoi on September 17, 2025, which ended up being an eleven-hour long mediation. (Decl. at ¶¶ 3-4, 9-11). In accordance with the Parties' agreement to mediate in-person, Ms. Sara Marsh, Defendant's General Counsel, and Ena T. Diaz, counsel for Defendant in Jackson Lewis's Miami office, traveled to New York and appeared in person. Mr. Lucas Buzzard and Mr. Maimon Kirschenbaum, counsel for Plaintiff, also appeared in person. (Decl. at ¶ 10).

On the morning of the scheduled mediation, Defendant was informed that Plaintiff would be attending mediation remotely because he was allegedly not feeling well. (Decl. at ¶ 10). The parties agreed to proceed with the mediation after Plaintiff indicated he was capable of participating remotely. Id. The mediation started at 10:00 a.m. and continued until 9:00 p.m. Id. During this mediation, in which the mediator followed all standard protocols and advised the parties of the process, including the confidential nature of the proceedings. Defendant made

3

numerous compromises, and the parties reached an agreement on monetary terms and material non-economic terms in exchange for Plaintiff's release of his claims against Defendant. (Decl. at ¶¶ 10-11). While still before the mediator, Defendant and Plaintiff's counsel exchanged several drafts of a Term Sheet and agreed to the final terms of the Term Sheet, which included all material terms. (Decl. at ¶ 12). (Exhibit "A").[2] The Term Sheet specifically confirmed that the Parties agreed to resolve Plaintiff's claims against TPUSA upon certain terms and conditions to be more formally memorialized in a detailed "long-form" settlement agreement. The Term Sheet included specific reference to all monetary and non-monetary terms of the settlement. Additionally, the Term Sheet explicitly stated that it was a legally binding agreement. (Decl. at ¶¶ 13-14). (Exhibit "A"). The mediator did not end the mediation until the Term Sheet was fully executed. Once the Term Sheet was fully executed, the mediator thanked the respective Parties, congratulated the Parties for ending the litigation, and ended the mediation. (Decl. at ¶ 15). At that point, Defendant understood the matter was effectively resolved. (Decl. at ¶ 16). Indeed, Plaintiff's counsel certainly indicated a similar understanding when he transmitted Plaintiff's signed Term Sheet, stating "[g]lad we were able to get this done." (Decl. at ¶ 17) (Exhibit "B"). Further expressing the clear understanding between the Parties, Plaintiff's counsel later stated his office would "look for the long form agreement" when the draft was ready. Id.

        After Defendant sent the long-form settlement agreement to Plaintiff's counsel and followed up numerous times for the executed copy, Plaintiff indicated on October 21, 2025, through counsel and without any explanation, that he would not be signing the long-form settlement agreement and that Plaintiff was revoking his consent to the settlement terms. (Decl. at ¶ 18). Counsel for Defendant held a call with Plaintiff's counsel, Lucas Buzzard, on October 22, 2025 to

---

[2] Simultaneously with this motion, Defendant has filed a motion to file the Term Sheet under seal. The terms of the Term Sheet and the monetary consideration are explicitly confidential under the Parties' agreement.

better understand the basis of his position and to attempt to resolve any disputes. During this call, Plaintiff's counsel provided no reason for Plaintiff's decision not to sign the agreement and Defendant's counsel informed Plaintiff's counsel that Defendant intended to file the instant motion. Plaintiff's counsel represented that he would make another attempt to discuss the matter with his client and inform him that Defendant intended to file a motion to enforce the settlement. On October 24, 2025, Plaintiff's counsel confirmed that Plaintiff's position remained unchanged. (Decl. at ¶ 19) (Exhibit "C").

In this context, considering both the language of the Term Sheet and Plaintiff's representation by counsel, Plaintiff's refusal to execute the long-form settlement agreement constitutes a clear breach of the Parties' binding and negotiated terms documented in the Term Sheet. If left unaddressed, such conduct risks undermining the finality of mediated agreements and opens the door for other plaintiffs to challenge agreements reached at the mediation table without consequence

## **LEGAL STANDARD**

A district court has the power to enforce a settlement agreement reached in a case that was pending before it. Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974). A settlement agreement is governed by contract law. Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007); Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999). An enforceable settlement agreement comes into being if there is "an offer, acceptance, consideration, mutual assent, and intent to be bound." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004). The parties must agree "on all essential terms," Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 372 (2d Cir. 2003). "[O]nce reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the

5

settlement and the time it is reduced to writing." Elliot v. City of New York, No. 11-cv-7291, 2012 U.S. Dist. LEXIS 126133 at *3 (S.D.N.Y. Aug. 31, 2012).

## ARGUMENT

"It is well-settled that a settlement agreement is presumptively binding and conclusive" and, as settlement agreements "are strongly favored by New York courts" they "may not be lightly cast aside." Quinones v. Police Dep't of N.Y., No. 10-cv-6195-JGK-JLC, 2012 U.S. Dist. LEXIS 51697 at *11 (S.D.N.Y. Apr. 12, 2012) citing Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). A preliminary agreement may be binding even when parties intend to later memorialize a long form agreement. Steinfeld v. IMS HealthInc., No. 10-cv-3301-CS-LMS, 2014 U.S. Dist. LEXIS 56178 (S.D.N.Y. Feb. 14, 2014), adopted by No. 10-cv-3301-CS, 2014 U.S. Dist. LEXIS 55420 (S.D.N.Y. Apr. 21, 2014). Under well-settled law within the Second Circuit, the facts presented here demonstrate that the Parties entered into a mutually binding settlement agreement.

### I. THE WINSTON FACTORS SUPPORT ENFORCEMENT OF THE SETTLEMENT AGREEMENT.

The Second Circuit assesses four factors to determine if parties intended to be bound by an agreement, all of which, here, weigh in favor of enforcing settlement. Courts look at the following factors: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985).

#### A. The Term Sheet is Binding and Enforceable Based on Plain Language

Under the first Winston factor, the Parties clearly intended to be bound by the Term

Sheet. The Term Sheet is enforceable based on its plain language. See e.g., Little v. Greyhoud Lines, Inc., No. 04-cv-6735-RCC, 2005 U.S. Dist. LEXIS 22247, at *3 (S.D.N.Y. Sept. 29, 2005); Elliot v. City of New York, No. 11-cv-7291, 2012 U.S. Dist. LEXIS 126133 (S.D.N.Y. Aug. 31, 2012); Janneh v. GAF Corp., 887 F.2d 432 (2d Cir. 1989). "General principles of contract law must govern the interpretation of a settlement agreement." Suarez v. SCF CEDAR, LLC, No. 13-cv-7420-ALC-RLE, 2016 U.S. Dist. LEXIS 34064, at *3 (S.D.N.Y. March 14, 2016) (citing Goldman v. C.I.R., 39 F.3d 402, 405 (2d Cir. 1994)). "To determine whether a settlement agreement was agreed to, the Court looks first to the plain language of the agreement." Id. "For a contract to be valid under New York law, there must be an offer, acceptance, consideration, mutual assent, and an intent to be bound. When the terms of a contract are clear, the subjective intent of the Parties is irrelevant." Id.

The Term Sheet, which Plaintiff signed, states "The parties to this matter have agreed to resolve [Plaintiff's] claims against [Defendant] upon the following terms and conditions, which will be more formally memorialized in a detailed settlement agreement, with the initial draft to be prepared by counsel for Defendant". (Exhibit "A"). It is unquestionable that the Term Sheet was a binding settlement agreement. This case is similar to Murphy v. Inst. Of Int'l Educ., No. 19-cv-1528-ALC-RWL, 2020 U.S. Dist. LEXIS 133807 (S.D.N.Y. July 2, 2020).[3] In Murphy, at the conclusion of mediation, the parties signed a mediation agreement outlining the material terms of the settlement. However, after counsel negotiated the long form settlement agreement, plaintiff refused to sign. The plaintiff in Murphy sought to continue litigating and defendant filed a motion to enforce the agreement. The court determined that the mediation agreement was binding.

---

[3] Unlike Murphy, the Plaintiff herein has had the benefit of counsel throughout his litigation (not just for the purposes of mediation), further supporting the fact that he has been fully informed of the binding nature of his agreement, the strengths and weaknesses of his claims, and the relative risks of protracted litigation.

Similar to Murphy, Plaintiff, who was represented by counsel, executed a binding Term Sheet, which set forth all material terms, at the end of a full day mediation. (Exhibit "A"). The Second Circuit recognizes an agreement as binding when the parties "agree on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document." Adjustrite Sys. v. GAB Bus Servs., 145 F.3d at 548, (2d Cir. 1998); Macleod v. Post Graduate Ctr. For Mental Health, No. 14-cv-10041-ALC-JCF, 2016 U.S. Dist. LEXIS 137829 (S.D.N.Y. Sept. 30, 2016) (the court enforced a settlement agreement where "the parties have reached an agreement to settle the above referenced lawsuit but also anticipated further documentation, such as execution of a full release of claims").

Here, the Term Sheet clearly outlines the material terms of the settlement agreement reached between the parties. It specifies the monetary terms (including timing and tax treatment) and non-monetary terms of the settlement in detail and leaving no room for ambiguity. Further, the Parties' Term Sheet also reflects the Parties' mutual intent to be bound by the settlement. (Exhibit "A"). The Term Sheet states that the Parties "have agreed to resolve [Plaintiff's] claims against [Defendant] upon the following terms and conditions, which will be more formally memorialized in a detailed settlement agreement", "agree that the claims raised in Plaintiff's lawsuit, captioned Katsnelson *v. TPUSA, Inc. d/b/a Teleperformance,* 1:25-cv-7272, currently pending in the United States District Court for the Southern District of New York (the "Lawsuit") are settled and Plaintiff agrees to dismiss the claims, with prejudice, as outlined herein," "total monetary compensation is . . to be paid as follows", "[n]on-economic terms to the settlement for the Discrimination and State Law Settlement to include," "[t]his agreement is legally binding", and "[t]he parties affirm that they *freely, knowingly and voluntarily* enter into this settlement". (Exhibit "A")(emphasis added)

Courts routinely enforce settlements where material terms have been agreed to and

8

signed off on. Murphy, 2020 U.S. Dist. LEXIS 133807; Little v. Greyhound Lines, Inc., No. 04 Civ. 6735, 2005 U.S. Dist. LEXIS 22247 (S.D.N.Y. Sept. 30, 2005); Elliot v. City of New York, No. 11-cv-7291, U.S. Dist. LEXIS 126133 (S.D.N.Y. Sept. 5, 2012). Plaintiff and Defendant entered into a binding settlement and the plain language of the agreement supports the finality of this Action. The first Winston factor undoubtedly weighs in favor of the Parties' intent to be bound by the Term Sheet.

### B.   The Parties Engaged in Partial Performance

The second Winston factor also weighs in favor of the fact that the Parties intended to be bound by the Term Sheet. For example, Defendant immediately started drafting the supplemental long form settlement agreement, shared same with Plaintiff's counsel, and exchanged multiple e-mails with Plaintiff's counsel regarding same. Courts have consistently held that drafting supplemental documentation satisfies the second Winston factor. Williams v. City of New York, No. 14-cv-183-NGG-LB, 2015 U.S. Dist. LEXIS 136170 (E.D.N.Y. Oct. 5, 2015); Watson v. City of New York, No. 11-cv-335 (CBA)(CLP), 2012 U.S. Dist. LEXIS 172310 (E.D.N.Y. Oct. 24, 2012); Bravo v. Grand Review, LLC, No. 15-cv-0030 (DLI)(CLP), 2016 U.S. Dist. LEXIS 36441 (E.D.N.Y. Mar. 18, 2016). Further, Defendant has partially performed under the Term Sheet, by fulfilling one of the negotiated settlement terms.

### C.   The Settlement Agreement was in writing and included all material terms.

The third and fourth Winston factors have also been met. The third Winston factor assesses whether all material terms have been agreed upon. The Terms Sheet specifies all monetary and non-monetary terms of the settlement. The Parties agreed to the central terms of the agreement, and the Term Sheet went far beyond a broad outline of settlement. Alli v. Renee, No. 21-cv-09470-PGS-SN, 2024 U.S. Dist. LEXIS 237122, at *15-16 (S.D.N.Y. Nov. 21, 2024).

The fourth and final Winston factor has been satisfied, namely, whether the agreement would be one that would be reduced to writing. Here, the agreement is in writing and

9

signed by all Parties. McLeod v. Post Graduate Ctr. For Mental Health, No. 14-cv-10041-ALC-JCF, 2016 U.S. Dist. Lexis 137829 (S.D.N.Y. Sept. 30, 2016) (memorandum of understanding filled out at end of mediation constituted a writing favoring enforcement under the fourth Winston factor). Since all Winston factors weigh in favor of the Parties' intent to be bound by the Term Sheet, this Court should enforce the settlement.

## II. DEFENDANT IS ENTITLED TO REASONABLE ATTORNEY'S FEES AND COSTS INASMUCH AS PLAINTIFF HAS ACTED IN BAD FAITH BY REPUDIATING A COMPREHENSIVE AND MUTUALLY NEGOTIATED SETTLEMENT AGREEMENT.

Where, as here, the repudiating party to a settlement agreement acts in bad faith in requiring the other party to file a motion to enforce the settlement agreement, courts in this circuit have granted motions for costs and reasonable attorneys' fees. See Vari-O-Matic Mach. Corp. v. N.Y. Sewing Mach. Attachment Corp., 629 F. Supp. 257, 259 (S.D.N.Y. 1986)(awarding costs and reasonable attorney's fees where defendant represented to the court that the matter was resolved despite its subsequent attempts to back away from the agreement).

The courts of this state have also held that attempts to repudiate a settlement agreement after agreeing to its material terms, constitutes bad faith. See Palmer v. Cty. of Nassau, 977 F. Supp. 2d 161, 167 (E.D.N.Y. 2013) (finding bad faith where defendants ignored requests to resolve the matter after settlement was reached and ignoring e-mails and calls regarding same and awarding attorney's fees and costs as an appropriate sanction).

As thoroughly discussed throughout this motion, the Parties entered an enforceable and binding Term Sheet after a lengthy mediation (before an experienced private mediator) where Plaintiff was well-represented by very experienced employment law counsel and advised by his counsel of the enforceability of the agreement before he entered into it. This Court has consistently held that an afterthought or change of mind is not sufficient grounds to justify rejecting a

10

settlement. Cardona v. Community Access, Inc., No. 11-cv-4129, 2013 U.S. Dist. LEXIS 10778, at *10 (E.D.N.Y. 2013) (citing Willgerodt on Behalf of Majority Peoples' Fund for 21st Century, Inc. v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997)); Elliot v. City of New York, No. 11-cv-7291, 2012 U.S. Dist. LEXIS 126133 (S.D.N.Y. Aug. 31, 2012); Wright v. Eastman Kodak Co., 445 F. Supp. 2d 314, 317-18 (W.D.N.Y. 2006) (that the plaintiffs "believe[d] that they should have held out for more," was "not a legitimate basis to set aside an otherwise valid release").

Plaintiff has not identified any grounds under which the terms of the settlement would be unenforceable, and indeed he cannot under the facts before this Court. The process was fair and mutual. The Parties negotiated extensively, well into the late evening until they reached a mutually agreeable, binding and enforceable agreement. Plaintiff's actions reflect bad faith and constitute a blatant violation of the Parties' agreement. Accordingly, Defendant requests this Court grant its motion for costs and reasonable attorney's fees in making the instant motion to enforce and award Defendant any other relief that this Court deems just and appropriate.

## CONCLUSION

Defendant took deliberate and thorough measures to ensure that any settlement reached would be enforceable. The mediation was conducted in a formal setting where Plaintiff was represented by counsel, and facilitated by an unbiased private mediator mutually selected by the Parties. The Mediation lasted a full day during which the Mediator explained the nature of the process and. the parties did not conclude the mediation until a Term Sheet with all mutually agreed upon material terms was fully executed. Given the deliberate nature of the proceedings and the Parties' clear intent to be bound, Defendant respectfully requests the Court enforce the settlement agreement between Parties and award Defendant its reasonable attorneys' fees and costs incurred in bringing the instant motion to enforce and award Defendant any other relief the Court deems just and appropriate.

Dated: New York, New York
November 4, 2025

                                       Respectfully submitted,

                                       JACKSON LEWIS P.C.
                                       666 Third Avenue, 29th Floor
                                       New York, New York 10017
                                       (212) 545-4000

                                       By: */s/ Shannon D. Azzaro*
                                           Shannon D. Azzaro

## **WORD COUNT CERTIFICATION**

I hereby certify that the foregoing Defendant's Memorandum of Law in Support of Defendant's Motion to Enforce Settlement Agreement complies with Local Civil Rule 7.1 and Section II(B)(2) of Your Honor's Individual Rules of Practice. The Memorandum of Law contains 3,594 words as calculated by the word processing system used to prepare the document, excluding the caption, table of contents, table of authorities, and signature block.

Dated: November 4, 2025                        By: *s/ Shannon D. Azzaro*
    New York, New York                          Shannon D. Azzaro

4901-5798-3607, v. 1