**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT KATSNELSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TPUSA, INC. d/b/a Teleperformance,<br><br>Defendant. | No. 23-cv-08327 |

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE

**JOSEPH & KIRSCHENBAUM LLP**

D. Maimon Kirschenbaum
Lucas C. Buzzard
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640

*Attorneys for Plaintiff*

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** .......... i

**BACKGROUND** .......... 2

**ARGUMENT** .......... 4

**I. THE TERM SHEET IS NOT ENFORCEABLE BECAUSE PLAINTIFF EXERCISED HIS RIGHT NOT TO EXECUTE THE SEPARATE CONFIDENTIALITY AGREEMENT REQUIRED BY NEW YORK LAW** .......... 4

**II. THE WINSTON FACTORS DO NOT SUPPORT ENFORCEMENT OF THE TERM SHEET** .......... 8

A. Winston Factor #1 – The Parties Did Not Intend to be Bound in the Absence of a Formal Settlement Agreement .......... 8

B. Winston Factor # 2 – There has Been no Partial Performance .......... 10

C. Winston Factor # 3 – The Parties Did Not Agree on All Terms .......... 10

D. Winston Factor # 4 – The Type of Agreement (Settlement of Statutory Wage & Discrimination Claims) is Usually Committed to a Long-Form Settlement Agreement .......... 11

**III. THERE IS NO BASIS TO AWARD DEFENDANT ATTORNEY'S FEES OR COSTS** .......... 12

**CONCLUSION** .......... 14

## TABLE OF AUTHORITIES

**Cases**

*Adjustrite Sys. v. GAB Bus. Servs.*, 145 F.3d 543 (2d Cir. 1998) .....................................9

*Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240 (1975) .........................................2,12

*Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir. 1989) .....................9

*Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, No. 06-cv-02652,
2008 U.S. Dist. LEXIS 125131 (S.D.N.Y. Nov. 18, 2008)..................................8

*Dalewitz v. Juslaw LLC*, No. 24-cv-457,
2024 U.S. Dist. LEXIS 234266 (S.D.N.Y. Dec. 7, 2024) ....................................8

*Doe v. Kogut*, No. 15-cv-7726,
2017 U.S. Dist. LEXIS 53138 (S.D.N.Y. Apr. 6, 2017).......................................10,12,13

*Edelman v. Smith Barney, Inc.*, No. 98-cv-691,
2000 U.S. Dist. LEXIS 85 (S.D.N.Y. Jan. 5, 2000)..............................................2,12

*Eisemann v. Greene*, 204 F. 3d 393 (2d Cir. 2000) .........................................................12,13

*Langreich v. Gruenbaum*, 775 F. Supp. 2d 630 (S.D.N.Y. 2011) ...................................10

*R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69 (2d Cir. 1984)............................9

*IDT Corp. v. Tyco Group, S.A.R.L.*, 13 N.Y.3d 209 (N.Y. 2009)....................................7

*Palmer v. Cnty of Nassau*, 977 F. Supp. 2d 161 (E.D.N.Y. 2013) ..................................13

*Patel v. Long Island Univ.*, 2024 U.S. App. LEXIS 28735 (2d Cir. Nov. 13, 2024) .......9

*Powell v. Omnicom*, 497 F.3d 124 (2d Cir. 2007) ..........................................................11

*R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69 (2d Cir. 1984)............................25

*Schurr v. Austin Galleries of Ill., Inc.*, 719 F.2d 571 (2d Cir. 1983) ...............................8

*Separ v. Cnty of Nassau*, No. 21-cv-10,
2025 U.S. Dist. LEXIS 3931 (E.D.N.Y. Jan. 8, 2025) .........................................1,6

*Struggs v. Kia Motors Fin.*, No. 22-cv-6,
2024 U.S. Dist. LEXIS 57023 (S.D.N.Y. Mar. 28, 2024) ...................................13

*Vari-O-Matic Machine Corp. v. New York Sewing Machine Attach. Corp.*,
629 F. Supp. 257 (S.D.N.Y. 1986) .......................................................................12

*Wang v. Int'l Bus. Machs. Corp.*, No. 11-cv-2992,
2014 U.S. Dist. LEXIS 165515 (S.D.N.Y. Oct. 7, 2014) ....................................6

*Winston v. Winston v. Mediafare Ent. Corp.*, 777 F.2d 78 (2d Cir. 1985) .......................8,10,11

**Statutes, Rules, and Regulations**

N.Y. Gen. Oblig. Law § 5-336...............................................................................1,2,5,6

C.P.L.R. § 5003-b ........................................................................................1,5

Plaintiff Robert Katsnelson respectfully submits this memorandum of law in opposition to Defendants' motion to enforce a September 17, 2025 settlement term sheet. The simple reality is that the term sheet cannot be enforced because, under New York law, there is no enforceable agreement. The term sheet contains a material term ostensibly requiring both parties REDACTED [redacted] of, *inter alia*, Plaintiff's claims of discrimination and retaliation. Both New York's General Obligations Law and Civil Practice Law and Rules prohibit employers from including terms in settlement agreements prohibiting the disclosure of the "underlying fact and circumstances" of discrimination claims unless such confidentiality is the plaintiff's preference. *See* N.Y. Gen. Oblig. Law § 5-336(1); C.P.L.R. § 5003-b. Such preference must be memorialized in a written nondisclosure agreement signed by all parties and, after execution of such agreement, the plaintiff has seven days to revoke the agreement. *See* N.Y. Gen. Oblig. Law § 5-336(1)(b); C.P.L.R. § 5003-b.

Here, neither party ever signed a separate non-disclosure agreement indicating that confidentiality was Plaintiff's preference and, even if they had, Plaintiff clearly indicated his intent to revoke any acceptance of such agreement in his communications with Defendants through his counsel. Because the confidentiality provision was a material term of the overall agreement, and because Plaintiff exercised his right not to enter into the non-disclosure preference agreement required by New York law to effectuate that confidentiality provision, there was never any effective settlement agreement. *See, e.g.*, *Separ v. Cnty of Nassau*, No. 21-cv-10, 2025 U.S. Dist. LEXIS 3931, at *11 (E.D.N.Y. Jan. 8, 2025). Moreover, application of the familiar *Winston* factors indicate that there is no enforceable settlement agreement. Accordingly, Defendants' motion to enforce should be denied and this case placed back on the calendar for the completion of discovery.

Separately, Defendant's assertion that Plaintiff has acted in "bad faith" therefore entitling it to attorneys' fees is both unwarranted and unsubstantiated. The fact of the matter is that Plaintiff simply exercised his right under New York law not to execute confidentiality preference agreement and that decision as entirely within his prerogative. Moreover, unlike in the completely distinguishable cases upon which Defendant relies, Plaintiff has made no misrepresentations to this court, has not attempted to harass Defendants or delay these proceedings, and has not used the period following the parties' mediation to continue unwarranted litigation. As such, there has been no bad faith on Plaintiff's part and thus no basis to deviate from the "general rule governing attorneys' fee awards . . . [that] litigants pay their own attorneys' fees.'" *Edelman v. Smith Barney, Inc.*, No. 98-cv-691, 2000 U.S. Dist. LEXIS 85, at *8 (S.D.N.Y. Jan. 5, 2000) (quoting *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 257 (1975)).

**BACKGROUND**

Plaintiff's Complaint in this action alleges claims of discrimination and retaliation under 42 U.S.C. § 1981 and the New York City Human Rights Law ("NYCHRL"), equal pay violations under the federal and New York equal pay acts, and overtime wage violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *See* ECF Dkt. No. 1 (Compl.). On September 17, 2025, the parties attended private mediation, at the culmination of which the parties executed a term sheet. *See* Azzaro Decl. ¶ 9 & Ex. A (Term Sheet). The Term Sheet provided that Defendants would REDACTED [redacted] *See* Azzaro Decl., Ex. A ¶ 2(a)-(b).

As to the Discrimination and State Law claims, the Term Sheet contains a confidentiality provision, which states:

> REDACTED

Azzaro Decl., Ex. A ¶ 4(d).

Other provisions of the Term Sheet provide: (1) for REDACTED, *id.* ¶ 4(b); (2) that REDACTED *id.* ¶ 4(j), and (3) that the settlement REDACTED" *id.* ¶ 3.

The same day that the parties executed the Term Sheet, Defendant sent Plaintiff a draft Non-Disclosure Agreement ("Draft NDA"). *See* Buzzard Decl., Ex. 1 (Draft NDA). The Draft NDA referenced New York General Obligations Law § 5-336 and provided that REDACTED Buzzard Decl., Ex. 1 (Draft NDA) ¶ 2. It further provided that Plaintiff could revoke his acceptance of the NDA for a period of seven days following execution of the NDA and that REDACTED *Id.* ¶ 3. Finally, the Draft NDA states that the settlement agreement REDACTED *Id.* ¶ 4.

Neither Plaintiff nor Defendant executed the Draft NDA. *See* Buzzard Decl. ¶ 2. On September 25, 2025, Defendant sent Plaintiff a long-form settlement agreement containing additional material terms not referenced in the Term Sheet. *See* Buzzard Decl. ¶ 3 & Ex. 2 (Draft Long-Form Agreement). On October 21, 2025, Plaintiff's counsel informed Defendant that Plaintiff was not going to sign the long-form settlement agreement and that he was revoking his consent to the settlement terms. *See* Azzaro Decl., Ex. C. Defendant's motion to enforce followed.

## ARGUMENT

There is no enforceable settlement agreement here for several reasons. First, confidentiality of the underlying facts and circumstances is a material term of the Term Sheet and, pursuant to New York law, such provisions are not enforceable absent Plaintiff's execution of a separate confidentiality preference agreement. Second, the *Winston* factors do not support the conclusion that there is an enforceable settlement, as demonstrated by the long-form agreement Defendant drafted, which contains materially different terms than the Term Sheet. Finally, there is no basis to award attorneys' fees and costs to Defendant in connection with its motion to enforce because there has been no "bad faith" or vexatious conduct here justifying such a deviation from the general rule that each party to a contractual dispute bears its own attorneys' fees and costs.

### I. THE TERM SHEET IS NOT ENFORCEABLE BECAUSE PLAINTIFF EXERCISED HIS RIGHT NOT TO EXECUTE THE SEPARATE CONFIDENTIALITY AGREEMENT REQUIRED BY NEW YORK LAW

Defendant's motion to enforce should be denied for the simple reason that there is no enforceable agreement. For confidentiality provisions like that contained in the Term Sheet to be effective, New York law requires that the plaintiff in a discrimination suit like this execute an agreement stating that confidentiality is his preference. Plaintiff never executed such an agreement. Because the confidentiality provision is a material term of the Term Sheet, and because

Defendant's performance under the Term Sheet is expressly conditioned on its receipt of the separate non-disclosure agreement that Plaintiff never signed, the Term Sheet is not an enforceable contract under New York law.

New York's General Obligations Law states that:

> [N]o employer . . . shall have the authority to include or agree to include in any settlement, agreement or other resolution of any claim, the factual foundation for which involves discrimination, harassment, or retaliation . . . any term or condition that would prevent the disclosure of the underlying facts and circumstances to the claim or action unless the condition of confidentiality is the complainant's preference.
>
> Any such term or condition must be provided in writing to all parties in plain English . . . and the complainant shall have up to twenty-one days to consider such term or condition. If confidentiality is the complainant's preference, such preference shall be memorialized in an agreement signed by all parties. For a period of at least seven days following the execution of such agreement, the complainant may revoke the agreement, and the agreement shall not become effective or be enforceable until such revocation period has expired.

N.Y. Gen. Oblig. Law § 5-336(1)(a)-(b).

Simialrly, C.P.L.R. § 5003-b provides that employers "shall not have the authority to include" in the resolution of "any claim or cause of action . . . the factual foundation for which involves discrimination" any "term or condition that would prevent the disclosure of the underlying facts and circumstances to the claim . . . unless the condition of confidentiality is the plaintiff's preference." Any such confidentiality term "must be provided to all parties, and the plaintiff shall have twenty-one days to consider such term. If after twenty-one days such term or condition is the plaintiff's preference, such preference shall be memorialized in an agreement signed by all parties." C.P.L.R. § 5003-b. A plaintiff may revoke their preference agreement for a period "of at least seven days following the execution of such agreement" and "the agreement shall not become effective or be enforceable until such revocation period has expired." *Id.*

The above provisions "were enacted to afford greater protection for workers subjected to discrimination whose employers seek to conceal acts of workplace misconduct." *Separ*, 2025 U.S. Dist. LEXIS 3931, at *6 (citations omitted). Here, the Term Sheet's confidentiality provision prohibits disclosure of REDACTED, thus directly implicating N.Y. Gen. Oblig. Law § 5-336(1) and C.P.L.R. § 5003-b. *See Separ*, 2025 U.S. Dist. LEXIS 3931, at *5-6 ("If the settlement resolves claims of discrimination and includes a non-disclosure or confidentiality provision, then both N.Y. Gen. Oblig. Law § 5-336 and N.Y. C.P.L.R. 5003-b apply."). The parties clearly understood that these provisions apply, as Defendant provided Plaintiff with the separate Draft NDA that expressly references § 5-336. *See* Buzzard Decl., Ex. 2. By the plain terms of § 5-336(1) and § 5003-b, because Plaintiff never executed the preference agreement, Defendant, as the employer, is without "the authority to include" the confidentiality provision in the Term Sheet.

The unenforceability of the confidentiality provision, and Plaintiff's decision not to sign the Draft NDA, renders the entire Term Sheet unenforceable. Preliminary written agreements to settle lawsuits are "interpreted according to general principles of contract law." *Patel v. Long Island Univ.*, 2024 U.S. App. LEXIS 28735, at *2 (2d Cir. Nov. 13, 2024). In construing such agreements "the plain language of the agreement is the best evidence of the parties' intent." *Wang v. Int'l Bus. Machs. Corp.*, No. 11-cv-2992, 2014 U.S. Dist. LEXIS 165515, at *8 (S.D.N.Y. Oct. 7, 2014).

Here, the plain language of the Term Sheet indicates that Plaintiff's execution of the Draft NDA is a material component of the Term Sheet that acts as a condition precedent to effectuate the settlement. The Term Sheet's confidentiality provision explicitly requires REDACTED Azzaro Decl., Ex.

A ¶ 4(d), and Defendant's obligation to make settlement payments under the Term Sheet is similarly conditioned on REDACTED [redacted] *id.* ¶ 3. Thus, the Term Sheet expressly envisions that Plaintiff's execution of the NDA is an essential component of the agreement—a condition precedent necessary for the other central provisions of the Term Sheet to become effective. *See, e.g.*, *IDT Corp. v. Tyco Group, S.A.R.L.*, 13 N.Y.3d 209, 214-15 (N.Y. 2009) (where settlement agreement contemplated the execution of an additional agreement, and that additional agreement was never executed, the settlement agreement itself was not enforceable); *see also id.* at 213 n.2 (explaining that the relevant question is whether the agreement sought to be enforced "contemplated the negotiation of later agreements and if the consummation of those agreements was a precondition to a party's performance"); *Separ*, 2025 U.S. Dist. LEXIS 3931, at *9-10 (finding a confidentiality preference agreement to be a "material component of the broader Settlement Agreement" where, *inter alia*, the defendant's obligation to pay was conditioned on expiration of the revocation period). Indeed, Defendant's representations to this Court in its motion to enforce confirm that the Term Sheet's confidentiality provision is "central" and "material" to the overall agreement. *See* Def.'s Mem. at 8 (representing that the Term Sheet "clearly outlines the material terms of the settlement agreement"); *id.* at 9 (representing that "[t]he Parties agreed to the central terms of the agreement" in the Term Sheet).

In sum, because the Term Sheet explicitly considered Plaintiff's execution of the separate confidentiality preference agreement as a material precondition to the overall settlement and because Plaintiff – as was his right – decided not to execute the confidentiality preference agreement, the Term Sheet cannot be enforced.

## II. THE WINSTON FACTORS DO NOT SUPPORT ENFORCEMENT OF THE TERM SHEET

Even setting aside the clear unenforceability of the Term Sheet occasioned by Plaintiff's choice to exercise his rights under New York law by declining to sign the confidentiality preference agreement, application of the *Winston* factors demonstrates that it is unenforceable on its face. In *Winston v. Winston v. Mediafare Ent. Corp.*, the Second Circuit set forth four factors courts consider when assessing the enforceability of a preliminary agreement: "(1) whether there has been an "express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." 777 F.2d 78, 80 (2d Cir. 1985). "[I]f the Court finds substantial ambiguity regarding whether both parties have mutually assented to all material terms, then the Court can neither find, nor enforce, a contract." *Barbarian Rugby Wear, Inc. v. PRL USA Holdings, Inc.*, No. 06-cv-02652, 2008 U.S. Dist. LEXIS 125131, at *7 (S.D.N.Y. Nov. 18, 2008) (citing *Schurr v. Austin Galleries of Ill., Inc.*, 719 F.2d 571, 576 (2d Cir. 1983)). "The party seeking to enforce a purported settlement agreement bears the burden of proving that a binding and enforceable agreement exists." *Dalewitz v. Juslaw LLC*, No. 24-cv-457, 2024 U.S. Dist. LEXIS 234266, at *11 (S.D.N.Y. Dec. 7, 2024) (citing cases). For the reasons discussed below, Defendant cannot meet its burden here.

### A. Winston Factor #1 – The Parties Did Not Intend to be Bound in the Absence of a Formal Settlement Agreement

The opening paragraph of the Term Sheet clearly indicates that the parties never intended to be bound until execution of a separately negotiated long-form agreement. The opening paragraph states that the Term Sheet's REDACTED [redacted]

Azzaro Decl., Ex. A at 1. From this language, it is not only evident that the parties intended that there be a more formal and "detailed" agreement before conclusively resolving the matter, but also that the terms of that formal agreement would be subject to further negotiation, as indicated by the language that REDACTED t. Accordingly, this strongly suggests that the Term Sheet is not enforceable. *See Adjustrite Sys. v. GAB Bus. Servs.*, 145 F.3d 543, 548 (2d Cir. 1998) ("Ordinarily, where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract.").

Two additional considerations put to rest any doubt about the parties' understanding that additional negotiations and execution of a formalized settlement agreement were required before the matter would be conclusively resolved. First, Paragraph 3 of the Term Sheet conditions REDACTED both of which necessarily require steps beyond the Term Sheet to finalize. Azzaro Decl., Ex. A ¶ 3. Second, the Term Sheet envisions REDACTED which also requires additional negotiations and Plaintiff's acceptance. *See id.* ¶ 2.a.; *see also* Fed. R. Civ. P. 68. Both these considerations indicate that the parties did not intend to be bound unless and until the more formal settlement agreement was finalized and the additional documents prepared and fully agreed upon. *See R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76 (2d Cir. 1984) ("A . . . factor is whether there was literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to."); *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) ("There is a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents." (quotation omitted)).

**B. Winston Factor # 2 – There has Been no Partial Performance**

Defendant argues that the second *Winston* factor favors enforceability because their preparation of an initial draft of the long-form agreement constitutes "partial performance." Def's Mem. at 9. But courts in this District have rejected the conclusion that the mere drafting of a settlement agreement constitutes partial performance. *See Doe v. Kogut*, No. 15-cv-7726, 2017 U.S. Dist. LEXIS 53138, at *20 (S.D.N.Y. Apr. 6, 2017) ("Defense counsel's ordering if the minutes and preliminary drafting of the settlement agreement does not constitute partial performance."); *Langreich v. Gruenbaum*, 775 F. Supp. 2d 630, 636 (S.D.N.Y. 2011) (rejecting argument that drafting agreement constituted partial performance). This is especially so where the terms of the long-form agreement were never finalized or accepted by Plaintiff. *See Langreich*, 775 F. Supp. 2d at 636.

**C. Winston Factor # 3 – The Parties Did Not Agree on All Terms**

The third *Winston* factor considers "whether there was 'literally nothing left to negotiate." *Winston*, 777 F.2d at 82. This factor weighs decidedly against enforceability of the Term Sheet as that document itself envisions the preparation and finalization of at least three additional documents – the NDA, the long-form settlement agreement, and the offer of judgment on the FLSA claims. *See* Azzaro Decl., Ex. A at 1 & ¶¶ 2, 3, 4.d. Crucially, while Defendant is not attempting to enforce its draft long-form agreement here, an examination of that document reveals that it contains additional and different terms than those contained in the Term Sheet, thus clearly demonstrating the need for future negotiations. *Compare* Azzaro Decl., Ex. A, *with* Buzzard Decl., Ex. 2 (Draft Long-Form Agreement) ¶ 2(b) REDACTED [redacted], 7(b) REDACTED [redacted], 7(c) REDACTED

REDACTED, 7(d) REDACTED [redacted], 7(g) REDACTED [redacted].[1] These differences from the Term Sheet further indicate that the parties did not intend to be bound until after they completed a long-form agreement that was satisfactory to both parties in all respects. *See Powell v. Omnicom*, 497 F.3d 124, 130 (2d Cir. 2007) (changes to agreement relevant to the parties' intent to be bound "if they show that there were point remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect" (quotation marks omitted)).

**D. Winston Factor # 4 – The Type of Agreement (Settlement of Statutory Wage & Discrimination Claims) is Usually Committed to a Long-Form Settlement Agreement**

Finally, the fourth *Winston* factor considers whether the agreement is the type of contract that is usually put in writing. *Winston*, 777 F.2d at 83. Here, while the Term Sheet is written, the complexity of the issues involved in this case, including the differential treatment of the FLSA claims and other claims, as well as the need to comply with the confidentiality preference requirements of New York law, indicate that his is not a situation where the parties envisioned a conclusive resolution of the matter until a formal, long-form agreement was executed. *Cf. Adjustrite Sys.*, 145 F,3d at 551 (finding agreement not enforceable where it "clearly was of the type that ordinarily would be committed not only to a writing but to a formal contract complete with representations and warranties an the other standard provisions usually found in sophisticated, formal contracts").

In sum, because none of the *Winston* factors weigh in favor of finding an enforceable settlement agreement here, and because, in any event, the Term Sheet is not enforceable due to

[1] As may be seen, Defendant's representation that the long-form agreement "mirrors the previously agreed-upon term sheet and contains no additional terms" is not accurate. *See* Defs' Mem. at 1.

Plaintiff's exercise of his rights under New York law not to sign the essential confidentiality preference agreement, Defendant's motion to enforce should be denied.

### III. THERE IS NO BASIS TO AWARD DEFENDANT ATTORNEY'S FEES OR COSTS

As a final matter, Defendant's request for attorneys' fees because Plaintiff supposedly acted in "bad faith" should be summarily denied for several reasons. First, Plaintiff clearly did not act in bad faith as there is clearly no enforceable agreement here for the reasons discussed above. Second, "[t]here is no general rule that attorney's fees should be awarded on a successful motion to enforce a settlement agreement." *Doe*, 2017 U.S. Dist. LEXIS 53138, at *33-34 (citing cases). Quite the contrary – the "general rule governing attorneys' fee awards is that 'absent statute or enforceable contract [containing an attorneys' fees provision], litigants pay their own attorneys' fees.'" *Edelman*, 2000 U.S. Dist. LEXIS 85, at *8 (quoting *Alyeska Pipeline*, 421 U.S. at 257). It is only in the very "limited circumstances in which the opposing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," that the court may award attorneys' fees as a sanction under its inherent authority. *Doe*, 2017 U.S. Dist. LEXIS 53138 at *34 (internal quotation marks omitted); *see also Eisemann v. Greene*, 204 F. 3d 393, 396 (2d Cir. 2000) (emphasizing that the Circuit has "declined to uphold [attorneys' fee] awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes *and a high degree of specificity in the factual findings of lower courts*" (emphasis in original)).

The cases upon which Defendant relies to justify its request for fees here are entirely distinguishable from the situation here. In *Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment Corp.*, for example, the court awarded fees after the defendant represented to the court on multiple occasions that a settlement had been reached, and then after the court

dismissed the plaintiff's case on the basis of these representations, the defendant "began to back away from the agreement, "apparently fe[eling] free to delay and frustrate resolution of the cation" because no claims against it were pending. 629 F. Supp. 257, 259 (S.D.N.Y. 1986). Similarly, in *Palmer v. County of Nassau*, the "parties notified the Court that they had reached a settlement" thus causing the court to close the case, after which the defendants' attorneys ignored the plaintiff "for approximately a year and a half," and did not even bother to oppose the plaintiff's motion to enforce and for sanctions. 977 F. Supp. 2d 161, 165, 166-67 (E.D.N.Y. 2013).

Here, Plaintiff has not engaged in conduct even remotely similar—he made no representations to the Court that a settlement existed, made no attempt to continue the litigation of his claims in the intervening period, and notified Defendant of his decision just over one month after the mediation occurred. Courts have repeatedly distinguished the unique circumstances in the cases upon which Defendant relies from situations, like here, where litigants have simply challenged the enforceability of settlement agreements. *See Struggs v. Kia Motors Fin.*, No. 22-cv-6, 2024 U.S. Dist. LEXIS 57023, at *40-41 (S.D.N.Y. Mar. 28, 2024) (distinguishing the facts of *Palmer* and refusing to award fees or find bad faith where a plaintiff simply "challeng[ed] the enforceability of multiple . . . settlement agreements, without more"); *Doe*, 2017 U.S. Dist. LEXIS 53138, at *35 (distinguishing *Vari-o-Matic* and refusing to find bad faith where there was "no evidence . . . that the plaintiff sought to use the time . . . to pursue other claims" or advance other proceedings, and "may genuinely feel that the settlement agreement is no longer in her best interests"). Accordingly, because Defendant's allegations against Plaintiff do not even come close to the high standard necessary for the Court to award attorneys' fees under the bad-faith exception, their request must be denied. *See Eisemann*, 204 F.3d at 395-96.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to enforce the term sheet in its entirety and place this matter back on the calendar for completion of discovery.

Dated: New York, New York
November 25, 2025

By: *s/Lucas C. Buzzard*

D. Maimon Kirschenbaum
Lucas C. Buzzard
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
212-688-5640
*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing opposition complies with the word-count limitation stated in SDNY Local Rule 7.1(c). Excluding the case caption, tables, this certification, and counsel's signature block, but including all footnotes, this brief contains 4,321 words. I make this certification using the word count feature of Microsoft Word.

_/s/Lucas C. Buzzard___________